**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN VOLK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA | : | NO. 12-1432 |

## MEMORANDUM OPINION

Savage, J.                                                              February 19, 2013

John Volk brings this action against his former employer, the Philadelphia School District ("District"), alleging age discrimination, retaliation and hostile work environment under the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA"); and, gender discrimination, retaliation and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII") and PHRA. The District has moved for summary judgment on all counts.

We conclude that the District is entitled to summary judgment on Volk's claims of wrongful termination due to gender and age discrimination, and the hostile work environment claims. There are disputed issues of fact related to his retaliation claims that must be determined by the jury. Therefore, summary judgment will be granted in part and denied in part.

### Background

John Volk has had an eventful career with the District. He began his career with the District in 1970 as a math teacher at Lincoln High School. He was laid off after the 1970-1971 school year when an issue related to his teaching certification arose. He was rehired in January 1972 to teach math at Shaw Junior High School. Volk quit Shaw

before the end of the school year because it was a "terrible place" and "[t]he kids were out of control, [and] the administration was inadequate."[1]  In September 1979 or 1980, he returned to the District as a math teacher at Edison High School.  In 1988, he was reassigned to Franklin Learning Center.  In the fall of 1989, after a dispute with the principal, Volk was temporarily reassigned to University City High School as a result of a settlement negotiated by his labor union, the Philadelphia Federation of Teachers ("PFT").  The following year, he was assigned to West Philadelphia High School ("WPHS"), where he taught until the end of the 2003-2004 school year.  While at WPHS, Volk received two formal disciplinary notices, known as SEH-204s, due to his inadequate performance as a yearbook sponsor and an unspecified issue regarding a student's grade.  According to Volk, he left WPHS because he was "being harassed by the principal" who was "mentally sick" and "a sadist" who "was trying to get rid of any longtime teachers" at WPHS.[2]

In October 2004, the PFT negotiated Volk's transfer from WPHS to Martin Luther King High School ("MLKHS"), where the events central to this action occurred.  He remained there until February 2010, at which time he was administratively reassigned and eventually terminated.

At MLKHS, Volk taught math and held a number of positions, including class sponsor and grant writer positions, which provided either additional pay or reduced classroom time.  He also served as the PFT building representative, which afforded him

_____

[1] Pl.'s Dep. 8:22-9:5.

[2] *Id.* 26:24-27:21.

"reasonable time without loss of salary" to investigate complaints or grievances of MLKHS teachers.[3]

Kristina Diviny began working at MLKHS in 1996 as a biology teacher. In 2001, she was named assistant principal. In December 2007, approximately three years after Volk started teaching at MLKHS, she was appointed principal.

Volk contends that once Diviny became his supervisor, he "felt he was treated disparately and negatively by her because of his gender and age."[4] He felt that she awarded positions to less qualified younger female teachers, harassed him, and selectively enforced school guidelines as to him. The District denies any selective enforcement or preferential treatment towards younger female teachers by Diviny. The District proffers a number of reasons for not awarding the positions to Volk and eventually terminating him, which boil down to a contention that Diviny, students and teachers found him abrasive and a divisive figure at MLKHS. One teacher felt Volk was harassing her because she received the pathway community coordinator ("PCC") position he had wanted.[5] Diviny testified that she felt abused by Volk. She contended that he monopolized meetings and was running the "John Volk show."[6]

Diviny offered specific reasons for why she assigned younger teachers to certain non-teaching positions. When Volk applied for a class sponsor position, he expressed a

---

[3] Def.'s Statement of Undisputed Facts in Supp. of its Mot. for Summ. J. ("DSUF") ¶ 35. A building representative is elected by teachers to help with day-to-day issues they may encounter. *See About the PFT*, http://pft.org/Page.aspx?pgid=3 (last visited Feb. 14, 2013).

[4] Compl. ¶ 14.

[5] After he found out that another teacher got the PCC position, Volk spoke to the teacher and "told her that if she wanted to do the right thing, she should decline the job." Pl.'s Dep. 231:23-24. He asked her if she knew that he applied for the job. She did not. Volk then told her "to go to Ms. Diviny and decline the position." *Id.* 232:4-5.

[6] "[H]e is constantly in common planning time and thinking that he can set the agenda and that it's the John Volk show and not what the needs of the community are." Diviny Dep. 167:15-18.

preference for a one-year assignment to the senior class sponsor position. He stated that he "would be happy to be class sponsor for any of the classes, but, at [his] age, [he was not] sure [he] should make a long term commitment."[7] In June 2008, Diviny selected Volk as the senior class sponsor for the following school year.

Class sponsors followed their classes through high school. For example, a freshman class sponsor in the 2008-2009 school year would serve as sponsor for the same class each year through senior year. Volk contends that he was entitled to serve as a freshman class sponsor after his sponsored senior class graduated. The District argues that Volk had to apply for a freshman class sponsor position. In other words, it was not a lifetime appointment and Volk was never "removed" as a class sponsor. His sponsor position simply expired. Volk identified other teachers who continued as class sponsors.[8] However, those teachers were either ninth or tenth grade sponsors.[9] None of them looped from senior class sponsor to freshman class sponsor.

Diviny contends that she selected a younger teacher as a freshman class sponsor because that teacher, being a ninth-grade teacher, was already involved with ninth-graders. She thought the ninth-grade connection was important because the freshman class "was an isolated group at [MLKHS]."[10] Indeed, the job description of a freshman class sponsor (for the 2013 year) indicates that preference will be given to ninth-grade academy teachers and "first preference will be given to those not already

---

[7] DSUF ¶ 39; Pl.'s Resp. to Def.'s Asserted Statement of Undisputed Facts ¶ 39.

[8] Pl.'s Dep. 241:21-242:11.

[9] *Id.*

[10] DSUF ¶ 44.

being compensated for another position, then by seniority."[11]  Diviny testified that making the position a tenured one would deprive newer teachers the opportunity to serve as class sponsors.[12]  Diviny also testified that, in her professional opinion, the selected teachers were "better suited" for the positions.[13]

Diviny described her relationship with Volk as adversarial.[14]  Volk's colleague, Jennifer Freeman, described it as "cantankerous."[15]  Diviny contends that Volk continually questioned her actions, qualifications, and ability to do her job.  In the fall of 2009, during a discussion of a union matter with Diviny, Volk told her that he felt she was "picking on him because of his age."[16]  According to Volk, Diviny agreed that "there was something going on" with their professional relationship, but could not identify what it was.[17]  She did not address the age comment.

Volk testified that "several years" prior to 2009, MLKHS was "reconstituted" which resulted in about "80% of the faculty" leaving the school.[18]  The replacements were "brand-new" young teachers.[19]  In the 2008-2009 school year, of the eighty-five

---

[11] Pl.'s Statement of Material & Disputed Facts ("PSMF"), Ex. 4.

[12] Diviny Dep. 110:13-15.

[13] "And why was [Volk] not selected for the position?"
"Professional opinion that there were others that were better suited for the position.  So it wasn't that he was not selected but that others interviewed better than he or had qualifications, skills, whatever it was at the time."
*Id.* 93:21-94:4.

[14] *Id.* 24:24.

[15] Freeman Dep. 15:13-21.

[16] Pl.'s Dep. 221:21-222:4.

[17] *Id.* 222:5-9.

[18] *Id.* 50:17-19.

[19] *Id.* 50:19-21.

teachers at MLKHS, thirty were male and fifty-five were female.[20]  The age breakdown

was as follows: nine, including Volk, were born in the 1940s, twenty-one were born in

the 1950s, eleven were born in the 1960s, sixteen (of which eleven were female) were

born in the 1970s, and twenty-eight (of which nineteen were female) were born in the

1980s.

Diviny testified that there were more female teachers applying and coming into

teacher positions at MLKHS.  In fact, as an empowerment school, MLKHS was

"encouraged to select and garner services through Teach for America in particular."[21]

The teachers from Teach for America were predominantly young college graduates.[22]

Consequently, a lot of the new applications and new hires at MLKHS were significantly

younger than Volk.

In September 2009, during a teachers' meeting, called the common planning

time ("CPT"), Diviny observed Volk working on note cards, instead of participating as

was expected of teachers.[23]  She also contends he was late and left early.  Based on

these observations, Diviny issued Volk an SEH-204 incident report,[24] in which she

---

[20] PSMF, Ex. G.

[21] Diviny Dep. 60:14-19.

[22] *Id.*

[23] At the beginning of the 2009-2010 school year, all teachers were given a memorandum
regarding CPT expectations.  The teachers were told that they were to "be prompt and attentive
throughout the full meeting (no newspapers, grading, test making, etc.," "prepared with [their] CPT binder
and appropriate materials," "participate in a positive manner" and participate in "each session."  DSUF ¶¶
89-90.

[24] An "SEH–204" is a record of disciplinary reprimand that is included in a teacher's personnel file.

recommended that the report be placed in his personnel file and serve as a warning "that additional unsatisfactory incidents may lead to further administrative action."[25]

Volk challenged the SEH-204 at a December 14, 2009 disciplinary conference. At the conference, attended by Diviny, the Labor Relations Assistant in the Office of Employee Relations and a PFT union representative, Volk commented that "there is inconsistent treatment and discipline and that [he] is singled out. [He] added that he believed that this is becoming a pattern."[26] At Diviny's insistence, the SEH-204 form was placed in his official personnel file together with a hearing summary.

On February 2, 2010, Diviny received a letter from Volk, in which he wrote:

As a courtesy to you, cause of my general affection for you and your family, I am offering you a final opportunity reconsider the negative 204 that you are proposing enter my file. I hope you understand that my professional reputation, crafted over thirty years of service to the children of Philadelphia, is of paramount importance to me, and that I must take all necessary actions to protect that legacy, and that I will do so, regardless of the consequences for others. Please take a moment to reflect on whether a moment of vindictive pleasure is worth the possible consequences. I would prefer to bury the hatchet; I hope you will agree to do so.

If I don't receive a positive response from you within a few days, I will be forced to take whatever actions are open to me within the law. Once I start the snowball down the hill, it might not be possible to stop the avalanche. This is a sincere effort to resolve our differences amicably and should in no way be interpreted as a threat, just a statement explaining by situation.[27]

Diviny testified that she perceived the letter, along with references to her family, "burying the hatchet," "vindictive pleasure," and "avalanche," to be a threat.[28] She immediately contacted Adrienne Tolbert-Jackson, the District's Labor Relations

---

[25] DSUF ¶¶ 96-97.

[26] PSMF ¶ 39.

[27] Compl. ¶ 18; PSMF ¶ 42.

[28] Diviny Dep. 177:12-21.

Assistant who had attended the December 14, 2009 disciplinary conference. Tolbert-Jackson advised Diviny that she would discuss the letter with her supervisor, Andrew Rosen, Executive Director of Employee Relations. She instructed Diviny to notify Michael Silverman, the Regional Superintendent, about the letter. Silverman testified that during his conversation with Diviny, he had to calm her down because she was very upset and worried about her children.[29] In the meantime, Rosen, who is responsible for advising and assisting principals and administrators in disciplinary matters, reviewed the letter and found it threatening.[30] He concluded that the letter constituted a terminable offense.[31]

On February 18, 2010, Volk removed several students from his classroom for using cell phones and disruptive behavior.[32] Subsequently, four students submitted complaints about Volk, reporting that he removed students from his classroom and called students "animals," "devil children," and "the dumbest class he ever had."[33] The students accused him of having "a bad attitude, getting smart, creating a difficult, learning environment, changing practices after first marking period and abusing his power."[34] On February 22, 2010, Diviny faxed the student complaints to the administrative office.[35]

---

[29] Silverman Dep. 64:12-14.

[30] DSUF ¶ 114.

[31] *Id.* ¶ 115.

[32] PSMF ¶ 66.

[33] PSMF, Ex. EE.

[34] *Id.*

[35] At oral argument, the District's counsel represented that the decision to terminate Volk was based solely on the alleged threatening letter, not students' written complaints.

On February 22, 2010, Silverman informed Volk that he was being reassigned to the Comprehensive High School Regional Office effective the following day.[36] Volk, who was sixty-four years of age at the time, was replaced by Tim Lin, a male teacher ten years younger than Volk.[37]

Dr. Sherry Gross, Assistant Regional Superintendent, conducted Volk's first-level disciplinary investigation. She investigated both the threatening letter and the charge that he had improperly removed students from his classroom. On March 18, 2010, Gross and Tolbert-Jackson held an investigatory conference with Volk, who was represented by a PFT representative. At the conference, Volk complained of age and gender discrimination. Tolbert-Jackson responded that that was not the purpose of the conference. Nonetheless, Gross documented his complaints. After the first level investigatory conference, Gross recommended that Volk be terminated for the threatening letter and be rated unsatisfactory for the 2009-2010 school year. On April 15, 2010, she issued an SEH-204 recommending termination.[38]

The second level hearing was to be conducted by Silverman. In memoranda dated March 17 or April 12, 2010, Volk advised Silverman that he believed Diviny had subjected him to discrimination and harassment on the basis of age, gender and disability (cancer).[39] Volk insisted that all of Diviny's complaints against him were

---

[36] PSMF, Ex. FF.

[37] The assistant principal informed Diviny that Tim Lin was taking over for Mr. Volk. Diviny approved the replacement. Volk highlights that the assistant principal also asked how they can use Mr. Volk's temporary sub, Mr. Slaughter, whom he described as "young and energetic." PSMF, Ex. VV.

[38] PSMF, Ex. SS at 3.

[39] PSMF, Exs. J and QQ. On March 17, 2010 Volk wrote a formal memorandum to Silverman outlining specific examples of what he believed to be unfair treatment due to his age and gender. PSMF ¶ 81. On April 12, 2010, Volk wrote another memorandum that he contends expounded upon his March

"completely bogus."[40]  He also stated that Diviny "consistently exhibited preferential treatment" for younger female teachers.[41]  Although Volk disputes it, Gross, Nixon and Diviny testified that they were not aware of any complaint of discrimination made to Silverman.[42]

Volk remained at the regional office for the remainder of the 2009-2010 academic school year.  In September 2010, he reported back to the regional office, where he remained until the end of November when he was directed to stay home.

Before the second level hearing was scheduled, Silverman was reassigned to a different position.  On November 3, 2010, Penny Nixon, Associate Superintendent, held a conference with Volk and his PFT representative.  She adopted Gross's findings, including the determination that the letter was threatening.  She recommended that Volk be terminated.  By letter dated April 26, 2011, Volk was advised that a final recommendation for his termination would be presented to the School Reform Commission.[43]

Volk had two options to challenge the final recommendation for termination.  He could have either had a hearing before the School Reform Commission or proceeded with arbitration as set forth in the collective bargaining agreement between the District and the PFT.  He elected to proceed with arbitration.  However, the PFT declined to

---

17, 2010 memorandum, providing additional details and information.  *Id.* ¶ 83.  The two memoranda are almost identical.  The April memorandum provides descriptions of events that occurred in March 2010.

[40] PSMF ¶ 83.

[41] *Id.*

[42] DSUF ¶¶ 140-141.

[43] PSMF, Ex. UU.

arbitrate Volk's termination, stating that it had consulted with its counsel and determined that "there is little chance [a grievance challenging Volk's termination] would be sustained by an arbitrator."[44]

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

---

[44] DSUF ¶ 145.

**Discussion**

*Wrongful Termination Due to Age and Gender Discrimination*

Volk claims that Diviny discriminated against him because of his age and gender throughout the years he was employed at MLKHS. In his complaint, he recites a multitude of negative actions allegedly taken against him. These include: diverting awards to younger females; selectively enforcing guidelines as to [Volk] as compared to younger, female teachers; improperly awarding positions to less qualified, younger female applicants instead of him; replacing him with a younger female as a student chaperone; removing him as a class sponsor; harassing him and not other younger or female teachers; and disciplining him on pretextual grounds.[45] Volk does not specify which of these actions form the basis of his age and gender discrimination claims. In his opposition to the motion for summary judgment, he declares that he is limiting his age and gender discrimination claim to wrongful termination. As a result, we need not address each of his disparate treatment examples.

In moving for summary judgment, the District argues that Volk has not met his burden of producing evidence showing that the District's decision to terminate his employment was motivated by age or gender bias.

The ADEA prohibits discrimination in hiring, discharge, "compensation, terms, conditions, or privileges of employment" on the basis of age. 29 U.S.C. § 623(a)(1) (2006). Title VII prohibits discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a). The same evidentiary framework is used to evaluate claims of gender and age discrimination. *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995) ("ADEA and Title VII . . .

---

[45] Compl. ¶ 15.

serve the same purpose . . . [t]herefore it follows that the methods and manner of proof under one statute should inform the standards under the other[ ] as well.")); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409-10 (3d Cir. 1999) (holding the same standards apply to Title VII and the PHRA).

Where, as here, a plaintiff has adduced no direct evidence of discrimination based on his age or gender, the familiar *McDonnell Douglas* burden-shifting analysis is used to evaluate the claims.[46]  *See Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)); *see also Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (holding that the *McDonnell Douglas* framework still applies to ADEA claims after the Supreme Court's decision in *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009)); *Jones*, 198 F.3d at 410 (applying the *McDonnell Douglas* test to Title VII and PHRA claims).

Volk must first establish a *prima facie* case.  If he does, the burden of production shifts to the District "to identify a legitimate non-discriminatory reason for the adverse employment action."  *Smith*, 589 F.3d at 690 (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)).  If the District satisfies that burden, Volk then must put forth evidence from which a reasonable factfinder could conclude that the employer's proffered reason was a pretext for age and gender discrimination.  *Id.* (citing *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995)).  This final burden of production "merges with the ultimate burden of persuading [the jury] that

---

[46] A claim of intentional employment discrimination may be proven by either "direct" evidence of discriminatory intent or "indirect" evidence from which one can infer an intent to discriminate.  *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *Logue v. Int'l Rehab. Assocs.*, 837 F.2d 150, 153 (3d Cir.1988) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)).  Volk does not present any direct evidence of discriminatory intent.  Hence, we shall apply the *McDonnell Douglas* burden-shifting test.

[he] has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Age

To make out a *prima facie* case of age discrimination, Volk must show that: (1) he is forty years of age or older; (2) the District took an adverse employment action against him; (3) he was qualified for the position for which he applied or from which he was removed; and (4) he "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith*, 589 F.3d at 690 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

Volk has made out a *prima facie* case that the District wrongfully terminated him because of his age. He was sixty-five years of age when the District terminated him. He was qualified as a teacher. He was replaced by someone who was ten years younger than he was. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (holding that the plaintiff need not show any specific age difference to satisfy the fourth element of the *prima facie* case, and that even a five-year difference can be sufficient) (citations omitted).

The District contends that Volk was terminated because he wrote a threatening letter to his principal, which constituted a terminable offense. The letter was phrased as a "final opportunity to reconsider" the negative SEH-204 and referred to her family. According to the District, Diviny, Volk's supervisor, perceived the letter as a threat. Volk's reference to her family raised Diviny's concern for her own and her children's safety.

Volk contests the characterization of the letter as "threatening," arguing that his purpose was to resolve his dispute with Diviny cordially. He claims his only threat was to take legal action available to him, such as this lawsuit. Nonetheless, school administrators at various levels of the investigatory proceedings concluded that the letter was unprofessional and threatening. In short, the District contends that its disciplinary decision was not based on age, but on Volk's misconduct.

We conclude that the District has produced evidence of a legitimate non-discriminatory reason for its employment decision. Its justification for terminating Volk's employment was the threat made against his supervisor. Thus, we turn to Volk's burden to produce evidence showing that the District's reason was pretextual.

To defeat summary judgment, Volk can either, by direct or circumstantial evidence, discredit the District's proffered justification, or present evidence that his termination was because of his age. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). A plaintiff may discredit the proffered reason by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, . . . , and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (emphasis removed) (citations and internal quotation marks omitted); *see also DeAngelo v. DentalEZ, Inc.*, 738 F. Supp. 2d 572, 580 (E.D. Pa. 2010). Making bald, conclusory statements that the articulated reason is not credible is insufficient. *See Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972); *see also Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (holding that conclusory allegations of discrimination are

insufficient to avoid summary judgment). It is not enough to assert that the employer's reason is not worthy of credence. Instead, Volk must produce evidence that will "allow a factfinder reasonably to infer that [the District's] proffered non-discriminatory reason[] was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764 (internal citations omitted); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (holding that plaintiff is required "to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision"); *Stanziale v. Jargowsky*, 200 F.3d 101, 106-07 (3d Cir. 2000) (upholding summary judgment where the plaintiff attempted to show pretext by disputing the importance of the difference in educational qualifications between himself and the person hired rather than challenging the disparity itself or proving that the qualifications at issue bore no actual relationship to the employment being sought).

Volk does not dispute that he authored the letter to Diviny. He argues that the District could not have interpreted the letter as threatening and its professed reliance on it to fire him is false. He contends that a reasonable factfinder could disbelieve the District's reason because he did not intend the letter as a threat and the District could not have interpreted it as one.[47] Volk cites to Diviny's reference to it in a fax to Rosen as the "latest love letter" and his own statement in the letter that it should not be taken as a threat. We conclude that Diviny's facetious comment and the contents of Volk's letter do not demonstrate such an implausibility, incredulity, or weakness in the District's explanation for the job action.

Even if Volk demonstrates that the District's interpretation of the letter was wrong or mistaken, he must still prove that the District's termination of his employment was

---

[47] Pl.'s Mem. in Opp'n to Def.'s Partial Mot. for Summ. J. ("Pl.'s Opp'n Mem.") at 21.

motivated by a discriminatory animus. The issue is "not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765 (citation omitted); *see also Sempier*, 45 F.3d at 731 ("Pretext is not demonstrated by showing simply that the employer was mistaken.") (citation omitted). "'The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" *Keller,* 130 F.3d at 1109 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).

At his deposition, Volk mentions that another female teacher who was close to him in age had to transfer out of MLKHS.[48] However, he does not make any age discrimination claim based on this fact. Even if he did, this does not create an inference of age discrimination sufficient to overcome summary judgment. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (holding whatever circumstantial evidence is offered, however, "must point directly to a discriminatory reason for the employer's action.") (internal quotations omitted). Volk provides no contextual evidence to suggest that the District had a culture or pattern of age discrimination. He does not offer statistical evidence to show that the District generally treated older teachers worse than younger ones. *See, e.g., Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (holding that the mistreatment of other employees in the protected class can be evidence of intentional discrimination against the plaintiff). Nor does he offer any circumstantial evidence, such as derogatory comments by administrators, to show that the actions towards him or the other teacher were because of age bias. *See, e.g., Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527-28 (7th Cir. 2008) (citing *Troupe*, 20 F.3d at 737).

---

[48] Pl.'s Dep. 235:8-11.

Volk's pretext arguments fail because there is no evidence, direct or indirect, that age was a "but-for" cause of the District's actions against him. *Gross*, 557 U.S. at 177. Other than his conclusory statements and subjective feelings, Volk produced no evidence that his age played any role, let alone the determinative one, in his termination or any decisions affecting his employment. The mere fact that he was older than most of his coworkers does not make the actions of which he complains age-related.

In summary, Volk attempts to create the appearance of disputed issues of fact by arguing that the District's credibility is for the jury to decide. He cannot create a genuine issue of material fact simply by suggesting that a jury might not believe that the District interpreted his letter as threatening. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[I]f the defendant-official has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility. . . ."). He must offer something that calls the District's credibility into question. Because the burden of persuasion remains on him, Volk must identify "affirmative evidence" from which a jury could find that the District acted because of his age. *Id.* He has not done so. Therefore, we shall grant the District's motion for summary judgment on Volk's ADEA age discrimination claim.[49]

### Gender

To make out a *prima facie* case of gender discrimination, Volk must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) nonmembers of the protected class

---

[49] The PHRA's age discrimination protections are identical to the ADEA's. *See Fasold*, 409 F.3d at 184 n.8 (3d Cir. 2005) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)). Thus, for the reasons stated in our ADEA analysis, we shall grant the District's motion for summary judgment on Volk's PHRA age discrimination claim.

were treated more favorably. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000) (citation omitted).[50]

Volk has not made out a *prima facie* case of gender discrimination. He is a male. He was qualified as a teacher, the position he held.[51] He was terminated. He contends that female teachers received various forms of preferential treatment in working conditions. However, Volk has confined his gender discrimination claim to his termination. He has not shown that female teachers were not fired for the same conduct which the District cited for the grounds supporting his termination. He has not come forward with any evidence that female teachers were disciplined any differently than male teachers or him. Thus, the District is entitled to summary judgment on Volk's gender discrimination claim.

*Hostile Work Environment Claim*

Volk alleges that he was subjected to a hostile work environment in violation of the ADEA,[52] Title VII[53] and the PHRA. Significantly, a hostile work environment claim

---

[50] This is a reverse discrimination case. Volk, as a male, is a member of a historically "advantaged" group seeking redress under a statute enacted to prevent discrimination against females. As a non-minority, Volk would not satisfy the first element of a *prima facie* case under Title VII. *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999). To address this situation, the Third Circuit has developed a modified burden shifting analysis. *Id.* at 160-61. "[A]ll that should be required to establish a *prima facie* case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id.* at 161.

[51] The District does not dispute this fact.

[52] Although the Third Circuit has not specifically held that a hostile work environment claim is available under the ADEA, district courts in this Circuit have assumed the viability of such a claim. *See, e.g., Tate v. Main Line Hosps. Inc.*, No.03-6081, 2005 WL 300068, at *18 (E.D. Pa. Feb. 8, 2005); *Jackson v. R.I. Williams & Assocs.*, No. 98-1741, 1998 WL 316090, at *2 (E.D. Pa. June 8, 1998) (noting that "the rationale underlying Congress' decision to condemn ageism in the workplace is the same as its decision to outlaw racism" and that therefore "courts routinely employ Title VII and ADEA case law interchangeably").

[53] Title VII and the ADEA are comparable in many contexts. *Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc.*, 450 F.3d 130, 135 n.4 (3d Cir. 2006) (citing *Geary v. Visitation of the Blessed*

does not exist by itself.  It must be related to discrimination under Title VII or the ADEA.
*Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by
Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding the plaintiff must
establish that he suffered intentional discrimination because of his sex); *see also Blain
v. Bell Atl. of Pa.*, 42 F. Supp. 2d 527, 532 n.7 (E.D. Pa. 1999) ("A hostile work
environment is only actionable if it constitutes a form of unlawful discrimination."); *Ackel
v. Nat'l Comms., Inc.*, 339 F.3d 376 (5th Cir. 2003) (holding plaintiff who was removed
because of favoritism for another employee, and terminated for complaining about
favoritism, did not state claim for sexual harassment).  In other words, the harassing
conduct must be motivated by a discriminatory animus.  In this case, Volk must show
that the offending behavior was based on his age or gender.  *See Abramson v. William
Paterson Coll. of New Jersey*, 260 F.3d 265, 278 (3d Cir. 2001) (citing *Spain v.
Gallegos*, 26 F.3d 439, 447-48 (3d Cir. 1994)).  He has not made that showing.

To make out a hostile work environment claim, Volk must show that: (1) he
suffered intentional discrimination because he was a male and/or was older; (2) the
discrimination was severe or pervasive; (3) the discrimination detrimentally affected him;
(4) the discrimination would have detrimentally affected a reasonable male of his age in
that position; and (5) there is a basis for *respondeat superior* liability.  *Jensen*, 435 F.3d
at 449; *see also Pa. State Police v. Suders*, 542 U.S. 129 (2004).

Volk fails to proffer evidence satisfying the first two elements.  First, there is no
evidence establishing that he was harassed because of his age or gender.  He points to
no age or gender related comments or insults by anyone.  Nor does he present any

---

*Virgin Mary Parish Sch.*, 7 F.3d 324, 331 (3d Cir. 1993) (comparing the retaliation provisions of Title VII
and the ADEA)).

evidence of conduct that could reasonably be interpreted as having been directed at him because of his age or gender.

As to the second element, even if Volk had produced evidence of some age or gender-based hostility, it does not rise to the level of severe and pervasive harassment. "To fall within the purview of Title VII, the conduct in question must be severe and pervasive enough to create an environment the employee subjectively perceives as abusive or hostile, and an 'objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive.'" *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In determining whether harassment is sufficiently severe or pervasive to create a hostile work environment, we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening . . . or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Evidence of an isolated or single incident of harassment, unless extremely serious, does not establish a hostile work environment. *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Volk alleges a number of incidents which he claims were "demeaning and humiliating" and "routinely prohibited him from performing his job duties."[54] These include: (1) accusing him of being under the influence of alcohol and "forcing him to ride in the back of police car only to blow a 0.00 breathalyzer," (2) subjecting him to an investigatory conference, a formal disciplinary hearing and placing documentation in his

---

[54] Pl.'s Opp'n Mem. at 31. Significantly, nothing in his complaint shows that Diviny's actions were physically threatening, or frequent, or unreasonably interfered with his ability to perform his job.

personnel file; (3) forcing him to remain at "regional jail" in an environment which he deems inhumane; (4) refusing to let him act as a chaperone on a class trip after his reassignment to the regional office; (5) issuing him a formal SEH-204 for student complaints; (6) refusing to post open positions; and (7) replacing him as a class sponsor.[55]

Most of these incidents involve disciplinary proceedings. They reflect Volk's displeasure with the District's disciplinary policies. According to the complaint, Volk received three formal SEH-204s – for insubordination at the CPT meeting, writing a threatening letter to the principal, and wrongfully removing students from his classroom. They were all processed through the grievance procedure established in the collective bargaining agreement. There is no evidence that they were instigated or motivated by or related to Volk's age or gender.

The disciplinary process required the District to hold an investigatory conference after the issuance of a formal SEH-204. As prescribed, the District held the investigatory conferences with Volk. Had he gone through the grievance process and prevailed, he could argue that putting him through the procedures was meant to harass him. But, he did not prevail. The District's position was upheld each time.

Similarly, his contention that he was harassed by Diviny's refusal to let him act as a chaperone on a class trip has no merit. Diviny, upon Tolbert-Jackson's advice, informed Volk that he could not chaperone a class trip scheduled to occur in March because he was not permitted direct contact with other staff members and students during the investigation of charges against him while assigned to the administrative office. Silverman and Rosen confirmed that prohibiting a teacher from engaging in

---

[55] *Id.*

school activities while reassigned to a regional office was routine.[56]  In other words, a reassigned teacher, whether male or female, young or old, may not serve as a chaperone.

Volk contends he was forced to remain in an administrative office which he described as "a utility/storage room in the basement, unfit and unintended for human occupation with hard chairs, not intended for long term use, a dusty environment, unknown toxic hazards from numerous electric chairs, little ventilation, and ambient temperatures between 90 and 100 degrees Fahrnheight [sic], with as many as seven (7) people assigned to that space."[57]  It may well be that conditions in the administrative office were undesirable.  However, those conditions applied to all teachers assigned to the room regardless of gender or age.  In sum, Volk attempts to use the label "hostile work environment" to cover poor work conditions, unrelated to any discrimination based on a protected status.[58]

The alcohol breathalyzer incident may have been demeaning and humiliating. Diviny testified that she ordered a breathalyzer test because she smelled alcohol on Volk's breath, her assistant principal reported aggressive and hostile behavior on his part, and one of Volk's colleagues reported that Volk confided in her that he had a drink over lunch.  The test results were negative, raising a credibility question that cannot be resolved on summary judgment.  Nevertheless, even if the incident had been instigated

---

[56] Silverman Dep. 53:8-54:1; Def.'s Mem. in Supp. of its Mot. for Summ. J. at 7.

[57] Pl.'s Opp'n Mem. at 31.

[58] Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature.  Rather, it prohibits employers from discriminating against an employee (including by subjecting him or her to hostile working conditions) "because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).

by Diviny to harass Volk, it is a single, isolated one that, in light of the evidence most favorable to Volk, was not motivated by an age or gender based animus. A single isolated incident, even if inappropriate, embarrassing and insulting, is not sufficiently serious to establish a hostile work environment. *See Fahnbulleh v. Carelink Cmty. Support Servs., Inc.*, No. 08-5055, 2009 WL 4591712, at *5 (E.D. Pa. Dec. 4, 2009) (Schiller, J.) (holding co-worker's inappropriate comments along with a single incident of inappropriate physical contact insufficient to establish hostile work environment).

Hostile work environment claims are designed to address work environments characterized by an excess of discriminatory ridicule or other intimidating behavior. Volk's evidence, even taken in the light most favorable to him, does not demonstrate a work environment of this nature. Thus, because Volk has not shown that he was subjected to a continuous and ongoing hostile work environment, we shall grant the District's motion for summary judgment on the hostile work environment claim.

*Wrongful Termination Due to Retaliation*

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. . . ." 42 U.S.C. § 2000e-3(a). The ADEA and the PHRA provide nearly identical substantive protections against retaliation as does Title VII. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

Volk does not present any direct evidence that the District retaliated against him for complaining about age and gender discrimination. He proceeds under the *McDonnell Douglas* framework.

To make out a *prima facie* case of retaliation under *McDonnell Douglas*, Volk must show that: (1) he complained of gender or age discrimination; (2) the District terminated his employment or took other adverse action; and (3) there was a causal connection between his complaining and the termination. *See Fasold*, 409 F.3d at 188 (citing *Fogleman*, 283 F.3d at 567-68). If he does so, the burden shifts to the District to offer a legitimate, non-retaliatory reason for firing him. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). If the District does so, Volk must present evidence from which a reasonable fact finder could find that the District's articulated reasons are pretext for its actions. *Id.*

The undisputed facts reflect that Volk made no written complaints or EEOC filings until *after* Diviny recommended and the District upheld his administrative transfer on February 20, 2010. He has produced no evidence that either Diviny, Gross or Nixon, who were involved in his investigatory and disciplinary conferences, had any knowledge of his written complaint to Silverman that made on March 17, 2010.

Attempting to supply a reason why the District took action against him, Volk alleges that he made a number of oral complaints of discrimination to Diviny prior to submitting a written complaint to Silverman. Specifically, after he did not receive the positions for class and government sponsor for the 2009-2010 school year, he complained to Diviny asserting that she cannot give out jobs "simply because someone is younger" or withhold jobs from teachers who "already have too many jobs – because they're older."[59] In the summer of 2009, he complained to Diviny that there are "teachers who are old, who have experience, and have met the criterion" and that she

---

[59] Pl.'s Opp'n Mem. at 13 (citing Pl.'s Dep. 217:6-14; 219:16-23; 231:13-19).

passed over them to award the PCC position to a younger female teacher.[60]  In the fall of 2009, after Diviny issued the SEH-204 regarding the CPT meeting, Volk told Diviny that he felt she was picking on him because of his age.[61]  This was the most recent oral complaint he could identify, and it occurred in late October or early November of 2009, approximately a month after Diviny initiated formal disciplinary proceedings against him on September 17, 2009.

At his deposition, Volk testified that he "made a lot of complaints, but [he didn't] remember for sure if [he] stated the – used the word gender or not or age, but [he] made complaints that were related to things."[62]  Volk contends that he made oral complaints throughout his employment at MLKHS.  However, these vague and non-specific complaints made no reference to age or gender.[63]

During the December 14, 2009 conference regarding the SEH-204 relating to the CPT meeting, Volk and his union representative contended that there was "inconsistent treatment and discipline and that [Volk] is being singled out."[64]  Volk added that it was "becoming a pattern."[65]  No one mentioned age or gender discrimination.  Nor did Volk relate the claimed inconsistent treatment to his age or gender.

---

[60] *Id.* (citing Pl.'s Dep. 225:7-19).

[61] *Id.* at 14 (citing Pl.'s Dep. 221:14-24; 222:1-4).

[62] Pl.'s Dep. 175:1-4.

[63] *See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir. 1995) ("While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists."); *Zivkovic v. Juniper Networks, Inc.*, 450 F. Supp. 2d 815, 824 (N.D. Ohio 2006) ("Isolated and ambiguous comments 'are too abstract . . . to support a finding of age discrimination.'") (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)).

[64] PSMF, Ex. Q.

[65] *Id.*

On February 22, 2010, almost three weeks after Volk delivered the "threatening" letter to Diviny and a few days after removing students from his classroom, he was transferred to the administrative office. After his transfer, Volk wrote a formal memorandum (two slightly different variations of which are dated March 17 and April 12, 2010) to Silverman, stating that he had been a victim of age and gender discrimination "for nearly two years."[66] This was Volk's first formal written and specific complaint about age and gender discrimination. On April 14, 2010, in an email to Diviny, Gross reported that she had spoken to Silverman about the termination recommendation and "it's a GO."[67]

At the investigatory conference on March 18, 2010, Tolbert-Jackson informed Volk that the point of the investigatory conference was to discuss his letter to Diviny and the students' complaints, not any other issues. In her conference summaries, which were eventually forwarded to Nixon, Gross documented Volk's discrimination complaints. Following the March 18, 2010 conference, Gross recommended termination, contending she was "appalled" by Volk's "egregious, unprofessional and threatening" letter to Diviny.[68] Other than documenting Volk's complaints in her conference summaries, Gross did not mention or address Volk's general discrimination allegations.

---

[66] PSMF, Exs. J, QQ. At his deposition, Volk could not recall when he sent the memorandum to Silverman or whether one was a draft version of the other. Pl.'s Dep. 172:6-14; 227:23-229:3. Silverman testified that he received the March 2010 memorandum. During discovery, the District produced the April 2010 version. Thus, the record reflects that the District received both memoranda.

[67] PSMF ¶ 87. Significantly, Silverman testified that Gross's statement in the email was inaccurate because he did not make the termination recommendation at that time. Silverman Dep. 56:13-57:1. According to Silverman, he could not have told Gross that he was recommending termination because he waited until the first level conference and hearing was complete before he made any determinations. In fact, because he was replaced by Nixon, Silverman never got an opportunity to address Volk's memorandum.

[68] PSMF, Ex. MM.

On September 26, 2010, during a conference reviewing the March 18, 2010 SEH-204, attended by Gross, Tolbert-Jackson and a PFT representative, Volk contended that he was "the aggrieved party" and that Diviny "must be a very sick individual."[69]  According to Volk, "[Diviny] lied repeatedly" and the whole process was "mishandled by Dr. Gross" and "trumped up by school police who are very friendly with Principal Diviny."[70]  Following the conference and after Nixon's independent second-level review, the District terminated Volk.

Drawing all reasonable inferences in his favor, Volk has made out a *prima facie* case of retaliation.  He engaged in a protected activity, generally complaining of age and gender discrimination to Diviny.  In the spring of 2010, Volk authored a letter to Silverman, complaining about age and gender discrimination.  Gross recommended Volk's termination on April 14, 2010, two days after Volk's second memorandum to Silverman.  There is a question whether Silverman had conferred with Gross regarding her termination recommendation.  Construing the evidence in the light most favorable to Volk, we conclude that there is sufficient evidence of a causal link between the protected activity and the adverse employment action.

The District has put forth legitimate, non-retaliatory reasons for the termination.  It contends that the termination was an appropriate disciplinary response to Volk's unprofessional conduct.

Volk attacks the District's articulated reasons as pretextual, arguing both that the District's reasons are not credible and that retaliation was the real reason for the District's actions.  *See Fuentes*, 32 F.3d at 764.  He argues that, contrary to the

---

[69] PSMF, Ex. 3.

[70] *Id.*

District's contention, Diviny was not threatened by his letter. Rather, she referred to it as a "love letter."[71] Volk contends that Diviny supported his administrative transfer in February 2010 because he made oral complaints that she was picking on him because of his age dating back to late October or early November 2009. He stresses that Rosen and Silverman would not have transferred him unless Diviny had approved.[72] He accuses Gross and Tolbert-Jackson of not taking his complaints seriously at the March 18, 2010 conference. He also points to a complete lack of response to his March/April letter addressed to Silverman. In short, Volk contends that the District recommended his termination because he had made repeated oral and written complaints of age and gender discrimination.

In summary, it is undisputed that the District took adverse employment action against Volk. He was transferred to the regional office and eventually terminated. What is disputed is whether the District took those actions in response to Volk's letter and other unacceptable conduct or because he complained of age and gender discrimination. It is up to the jury to answer that question.

## Conclusion

For the reasons stated, we shall grant the District's motion for summary judgment on Volk's wrongful termination due to age and gender discrimination claims and his hostile environment claim. We shall deny the motion on his retaliation claim.

---

[71] PSMF, Ex. X.

[72] PSMF ¶ 61, Ex. Y.